### Seidle v. Seidle.

*Divorce—Indignities to person—Drunkenness.*

While drunkenness is not made a cause for divorce by acts of assembly, the conduct of a husband or wife given over to almost continuous drunkenness with its accompanying evils of loss of temper, violence, use of vile language, the calling of opprobrious names and keeping the other in a constant state of suspense, anxiety and mental suffering, may well constitute indignities to the person as defined by law.

Exceptions to master's report in divorce. C. P. No. 5, Phila. Co., March T., 1926, No. 951.

*M. E. Herman,* for libellant; *Jesse Finn,* for respondent.

MARTIN, P. J., May 16, 1928.—The libel was filed by the husband, alleging that the respondent subjected him to such cruel and barbarous treatment and indignities as to render his condition intolerable and life burdensome. An answer was filed denying the allegations of the libel.

Seidle v. Seidle.

After hearing testimony, the master filed a report finding that the libellant was not entitled to a divorce on the ground of cruel and barbarous treatment; but that he is entitled to a divorce on the ground of indignities to his person; that the libel should be dismissed as to the allegation of cruel and barbarous treatment, and that a decree should be entered for a divorce *a vinculo matrimonii* on the ground of indignities to the person.

Exceptions were filed on behalf of respondent to the finding of the master that the libellant is entitled to a divorce on the ground of indignities.

Libellant testified that he met the respondent in the back room of a saloon; that she was drinking at the time and he had a drink of whiskey with her, and within two weeks afterward he married her; that on the day preceding the marriage, she took him to a saloon where they had "quite a few drinks," and then to another saloon where they had "some drinks." That they spent the night riding around the park in his automobile, and the next morning he found he was married to her. That when the application was made for the license at City Hall, she answered all the questions, and the clergyman who married them knew that libellant was intoxicated and did not realize what he was doing.

In the course of the proceeding before the master, the libellant testified that respondent was habitually intoxicated and incapacitated from performing her household duties; that she used vile and insulting language in addressing him, and had occasionally assaulted him; that while intoxicated she attempted to cut her own throat, and her conduct during the time they lived together, caused requests to be made to them to leave their places of residence.

The respondent denied the charges. The master was justified in refusing to believe her testimony, which was not corroborated. In the application for the marriage license which she signed and swore to, she signed her name "Helen F. Murphy," and swore that she had never been married before. It was proved that she was married to a man named Lemont, by whom she had two children, and that he divorced her.

The record of a criminal trial was in evidence before the master which contained some unsavory testimony bearing upon respondent's moral character. She was prosecutrix in a charge against one Harold Lockyer as defendant, in which she testified that Lockyer, in company with another man, raped her. Lockyer was convicted, but when the record was exhibited to the Board of Pardons, he was pardoned. In the course of the trial, she swore that she was married to John Murphy on Nov. 18, 1918, and divorced from him on Feb. 11, 1921. In her testimony before the master she denied that she was ever married to Murphy or that she was divorced from him. She swore before the master that the libellant attended the trial of the rape case in the criminal court. Libellant swore that he was not present at the trial.

While drunkenness is not made a cause for divorce by the acts of assembly, the conduct of a husband or wife given over to almost continuous drunkenness, with its accompanying evils of loss of temper, violence, use of vile language, calling of opprobrious names and keeping the other in a constant state of suspense, anxiety and mental suffering, may well constitute indignities to the person as defined by our law.

During the time that the parties lived together the respondent was almost in an uninterrupted state of intoxication. Reprehensible as such conduct may be on the part of a husband, it borders on a calamity when indulgence in this bestial condition is personified in the wife. Qualities of tenderness and delicacy, ordinarily the chief assets of the wife, give way to the coarse, brutal and revolting manifestation of a nature lower even than that of an animal.

In the instant case, the libellant had constantly before him the unnerving

Seidle *v.* Seidle.

anticipation of finding his wife drunk. He was repeatedly insulted by her. She threw china at him. In her state of alcoholism, goaded by the fury that liquor inspires, she attempted to commit suicide, an attempt which was thwarted by the quick action of her husband in procuring medical assistance. He gave her up once because life was intolerable and burdensome. Upon her promise to do better, he took her back, to meet with the same fate.

The master has carefully and thoroughly considered the elements of proof adduced by the libellant in support of this charge. He had the additional advantage of seeing and hearing the witnesses in person. Were the facts of this case such as to disclose temporary and spasmodic aberration from a state of sobriety, it would not be sufficient to justify a recommendation or a decree, but where, as has been shown, there is virtually a constant and uninterrupted condition of drunkenness, accompanied with acts of humiliation amounting almost to cruelty, the libellant has made out the case and should be granted relief.

And now, to wit, May 16, 1928, the exceptions filed on behalf of respondent are dismissed and the report of the master approved.